UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No. 18-CR-057(RBW) |
| | : | |
| PETER SAUL THEADO | : | |
| | : | |
| Defendant. | : | |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, submits that a sentence at the top end of the Sentencing Guidelines range as determined by the Court, followed by 3 years of supervised release with appropriate conditions, would adequately serve the interests of justice as codified in 18 U.S.C. § 3553(a). The Government submits this Memorandum in support of this position, and to assist the Court in fashioning an appropriate sentence.

## PROCEDURAL BACKGROUND

The defendant, Peter Saul Theado, was arrested on March 8, 2018 and held without bond following his initial appearance and arraignment the following day. On March 13, 2018, a grand jury returned an indictment against the defendant charging him with Assaulting an Officer of the United States involving Physical contact in violation of 18 U.S.C. §111(a)(1) and Threatening to Assault and Murder a Federal Law Enforcement Officer in violation of 18 U.S.C. §115(a)(1)(B) and (b)(4). On March 16, 2018, Magistrate Judge Robin Meriweather ordered the defendant be committed to the custody of the attorney general and that a report regarding the defendant's competence to stand trial be prepared and forwarded to this Court no later than May 7, 2018. After receiving said report, which detailed medical treatments and other interventions which

1

appeared to restore the defendant to competency, this Court held a hearing on July 17, 2018, and made a finding that the defendant is competent to stand trial. On October 10, 2018, the defendant entered a plea of guilty to Count one of the Indictment charging Assaulting an Officer of the United States involving Physical contact in violation of 18 U.S.C. §111(a)(1).

## FACTUAL BACKGROUND

On March 8, 2018, the defendant, Peter Theado approached the White House entry gate located at 15th Street, N.W. and Alexander Hamilton Place, N.W. in Washington, D.C. Mr. Theado requested to speak with President Donald Trump and First Lady Melania Trump. He was denied entry and proceeded southbound on 15th Street, N.W.

Mr. Theado then proceeded northbound on 15th Street, N.W., turned left on Pennsylvania Avenue, N.W., and approached United States Secret Service Uniformed Officers Michael Amaturo and Salvatore Benanti at the north east entrance to the White House grounds. Officers Amaturo and Benanti were on duty, in uniform, and engaged in the performance of their official duties on behalf to the Secret Service when approached by Mr. Theado. Mr. Theado stated, "I am Peter J. Trump, director of the CIA. Where is the entrance to the White House?" Officer Amaturo denied Mr. Theado entry and informed Mr. Theado that he knew his identity based on previous encounters.

Mr. Theado repeated himself in a raised voice and demanded entry to the White House. Mr. Theado also repeated his claim that he was the director of the Central Intelligence Agency ("CIA"). In response to Mr. Theado's increased agitation, Officer Amaturo disembarked his bicycle and placed the bicycle between himself and Mr. Theado, creating a larger gap between the two men.

While yelling, Mr. Theado adopted a defensive posture and balled up his right fist. Reaching over the bicycle, Mr. Theado punched Officer Amaturo with significant force on the left side of the head. Officer Amaturo was wearing a bicycle helmet and was therefore uninjured.

Officer Amaturo and Officer Benanti employed control techniques in an attempt to detain Mr. Theado. Once on the ground, Mr. Theado refused commands to remove his hands from underneath his body and kicked his feet while the officers attempted to secure them.

After the officers successfully restrained Mr. Theado, he repeatedly attempted to spit on the officers, but was unable to lift his head high enough off the ground to successfully make contact. Officers then positioned Mr. Theado in an upright position on the curb. While on the curb, Theado unprovoked said to an assisting officer, U.S. Secret Service Uniformed Officer Jason Moore, "I will cut your fucking head off!"

Mr. Theado was transported to Sibley Hospital for abrasions on his right hand. When released from Sibley, Theado was transported to the Metropolitan Police Department Second District Station.

## SENTENCING CALCULATION

### A. STATUTORY MAXIMUMS

A violation of Assaulting an Officer of the United States involving Physical contact in violation of 18 U.S.C. §111(a)(1) carries a maximum sentence of a fine or imprisonment for not more than eight years. Additionally, U.S. Sentencing Guideline § 5E1.2 of the United States Sentencing Commission, Guidelines Manual, ("U.S.S.G." or "Sentencing Guidelines") permits the Court to impose a fine that is sufficient to pay the federal government the costs of any imprisonment, term of supervised release, and period of probation.

## B. SENTENCING GUIDELINE CALCULATION

The plea agreement sets forth the parties' agreement that, pursuant to U.S.S.G. 2A2.4 (Obstructing or Impeding Officers), the Base offense level for the charged crime is level 10; that three more levels are added pursuant to U.S.S.G. 2A2.4(b)(1(A) because the offense involved physical contact. After subtracting two levels for the defendant's acceptance of responsibility, the defendant's Sentencing Guidelines Level is estimated to be Level 11.

The plea agreement further set forth the parties estimate of the applicable criminal history score, but due to some uncertainty over the scoring of one or more of the defendant's prior convictions, found the applicable Criminal History Category to be either Category II or III. The estimate sentence guidelines range was therefore agreed to be either 10 to 16 months or 12 to 18 months.

## SENTENCING RECOMMENDATION

The Government requests that the defendant be sentenced to a term of imprisonment equal to the top of the applicable Sentencing Guidelines range as found by the Court, which the government estimates to be 18 months of incarceration, to be followed by a three-year period of supervised release. As discussed below, the Government makes this recommendation after considering the sentencing factors enumerated in 18 U.S.C. § 3553(a), the Sentencing Guidelines and policies promulgated by the United States Sentencing Commission, the nature and circumstances of the defendant's criminal actions in this case, his extensive history of similar or related crimes, and his pretrial acceptance of responsibility.

    **A.**    **THE DEFENDANT'S EXTENSIVE CRIMINAL HISTORY AND INCREASINGLY VOLATILE BEHAVIOR MILITATES IN FAVOR OF LENGTHY SENTENCE.**

    The instant case will represent the defendant's seventeenth criminal conviction. The Pretrial Services Report of the defendant's criminal history lists seventy contacts between the defendant and law enforcement resulting in arrests. The defendant began his string of adult criminal convictions in Ohio at age 19, where, between 1992 and 2016, he accrued ten convictions for offenses involving drug trafficking and abuse, petty theft and grand theft auto, intimidation and/or stalking involving a public official, and telephone harassment. Numerous other arrests resulted in dismissals, no papers or no bills and an acquittal by reason of insanity.

    The defendant accrued another four convictions prior to his sentencing in the instant case. Beginning in 2017, Mr. Theado has had numerous contacts with law enforcement ending in arrests, as well as multiple encounters with the U.S. Secret Service ("USSS") during his attempts to gain entry into restricted properties under their control. On January 8, 2017, USSS officers arrested the defendant after he appeared ready to ram the bollard barrier protecting the White House with a Nissan Altima. Records indicate that this arrest occurred on the defendant second attempt that day to enter a restricted area patrolled by the USSS. As a result of the arrest above, Mr. Theado was ordered to stay away from the White House and the surrounding grounds. Approximately 5 weeks after the arrest detailed above, the defendant was arrested again for violating that stay away order. The defendant failed to appear for a court hearing in September in both cases. A Judge of the Superior Court of the District of Columbia sentenced the defendant to 10 days of incarceration and suspended the sentence. The USSS reports that the defendant

5

was stopped or arrested for conduct at the White House or at the Trump Hotel four times during 2017 and 2018.

Finally, an outstanding bench warrant for the defendant remains in effect from Arlington County, VA. in connection with an incident during which the defendant urinated in the public area of a McDonald's Restaurant after being ordered to leave by a law enforcement officer.

In addition, the defendant's history of failure to abide by release conditions imposed by courts militates in favor of a sentence at the top end of the USSG guidelines range as found by the Court.  The defendant has been the subject of four prior bench warrants, has violated stay away orders, and has committed multiple offenses while on release awaiting further proceedings in other cases.  The U.S. Marshals arrested the defendant in Texas after his failure to appear in D.C. Superior Court, was subsequently charged with unlawful entry into the Trump Hotel due to his violation of a prior barring notice and was thereafter charged with assaulting staff while waiting evaluation and treatment at the Comprehensive Psychiatric Emergency Program ("CPEP") in Washington, D.C.  These two charges were dismissed as part of the plea agreement reached in the instant case.

**B.     THE GOVERNMENT'S SENTENCING RECOMMENDATION IS CONSISTENT WITH THE APPLICABLE LEGAL PRINCIPLES**

A district court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range."  United States v. Gall, 552 U.S. 38, 49 (2007).  The Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions" and are the "starting point and the initial benchmark."  Id. at 46-49.  The district court should next consider all of the applicable factors

set forth in 18 U.S.C. § 3553(a).  Id. at 49-50.  Indeed, the Guidelines themselves are designed to calculate sentences in a way that implements the considerations relevant to sentencing as articulated in § 3553(a).  United States v. Rita, 551 U.S. 338, 347-50 (2007).

The § 3553(a) factors include (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment; (3) the Sentencing Guidelines and related Sentencing Commission policy statements; and (4) the need to avoid unwarranted sentence disparities.

The nature and circumstances of this offense are serious, and necessitate that the sentence imposed in this case effectively deter others and the defendant himself from attempting to replicate such conduct. The offense – striking a federal officer who was on-duty and protecting the White House, is serious; the need for the sentence to provide just punishment and deterrence, as well as to protect the public from further crimes of the defendant, is especially strong when viewed against the context of the defendant's numerous attempts to enter the White House grounds, or other related restricted areas.  A sentence at the top end of the Sentencing Guidelines relays to the defendant and to others who would follow his example that such crimes are serious crimes which engender serious punishment.

The characteristics of the defendant himself also support a sentence at the top end of the sentencing guidelines. As detailed above, the defendant's extensive criminal history reveals scores of arrests and 17 criminal convictions, several for conduct in and around areas associated with the

President of the United States. Further, his failure to abide by the conditions of release set for him in previous cases strongly suggests that incarceration will be more effective deterrence than supervised release.

## **CONCLUSION**

The Government recommends that the Court sentence the defendant to a period of incarceration equivalent to the top end of the applicable Sentencing Guidelines range as found by the Court. Such a sentence appropriately punishes the defendant, provides important deterrence to the defendant and others, and protects the public from crimes committed by the defendant for the longest period possible under the sentencing guidelines. Likewise, a three-year period of supervised release allows the Probation Department and the Court to monitor the defendant's compliance with appropriate conditions for a reasonable period.

Respectfully submitted,

JESSIE K. LIU
UNITED STATES ATTORNEY
D.C. Bar # 472845

BY: _____-s-_____
THOMAS A. GILLICE
Assistant United States Attorney
D.C. Bar # 452336
555 4th Street, NW
Washington, DC 20530
202-252-1791